Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOSEPH PASKAS,** | **Civil Action No.: 23-1162 (ES) (CLW)** |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **UNITED PARCEL SERVICE, INC.** *et al.*, | |
| **Defendants.** | |

SALAS, DISTRICT JUDGE

Plaintiff Joseph Paskas filed this action for alleged violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, *et seq.* (Ex. 1 to D.E. No. 1 ("Complaint" or "Compl.")). Before the Court is United Parcel Service, Inc.'s ("UPS" or "Defendant") motion to dismiss the Complaint. (D.E. No. 3 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendant's Motion is **GRANTED,** and Plaintiff's Complaint is dismissed *without prejudice*.

## I.     BACKGROUND

### A.     Factual Allegations

On or about June 7, 2004, UPS hired Plaintiff to work as a Driver. (Compl. ¶ 7). After working as a Driver for approximately six months, Plaintiff was promoted to the position of On-Road Supervisor. (*Id.* ¶ 8). In or around 2014, Plaintiff became a Driving Instructor at UPS's Driving Training School in Chicago, Illinois, and in 2015, Plaintiff was promoted to the position

of On-Road Manager at UPS's Meadowlands, New Jersey Facility.  (*Id.* ¶¶ 10 & 12).  Plaintiff alleges that he routinely received favorable performance evaluations from his supervisors in all of these roles at UPS.  (*Id.* ¶¶ 9, 11 & 13).  On or about October 11, 2017, Plaintiff was allegedly promoted to the position of Staff Level Division Manager and worked in that position first in New York and then in New Jersey.  (*Id.* ¶ 14).  As Staff Level Division Manager, Plaintiff was responsible for over 900 employees.  (*Id.* ¶ 15).

In or around March 2021, Emily Bermudes, a Feeder On-Road Supervisor in Louisville, was transferred to UPS's facility in New Jersey.  (*Id.* ¶¶ 16 & 19).  According to the Complaint, after her transfer, Ms. Bermudes was required to satisfy 1094 qualification training so that she could work as an On-Road Supervisor in New Jersey.  (*Id.* ¶ 20).  Although Ms. Bermudes advised Plaintiff that she had satisfied her 1094 qualification training in 2020, Plaintiff alleges that she did not pass the 1094 qualification examination in 2021.  (*Id.* ¶¶ 18 & 22).  Plaintiff claims that when he began to investigate why Ms. Bermudes had difficulty in passing the 2021 1094 qualification examination, Ms. Bermudes "admitted that her Supervisor in Louisville, Travis Joyner, 'rubber-stamped' her 1094 examination in 2020."  (*Id.* ¶ 23).  Plaintiff alleges that upon learning this information, he immediately and repeatedly complained to his supervisors that Ms. Bermudes was unqualified to perform her job duties in violation of UPS policy and federal and state transportation regulations.  (*Id.* ¶¶ 24–25).

According to the Complaint, after Plaintiff alerted his supervisors that Ms. Bermudes was not qualified to perform her job responsibilities, Ms. Bermudes reported Plaintiff for engaging in inappropriate speech.  (*Id.* ¶ 26).  Plaintiff alleges that UPS conducted an investigation into Ms. Bermudes's complaint between July 2021 to February 2022.  (*Id.* ¶ 27).  Plaintiff allegedly continued to complain about Ms. Bermudes's inability to the pass the 1094 qualification

examination.  (*Id.* ¶ 28).  However, Plaintiff claims that UPS never launched an investigation into his complaints about Ms. Bermudes's lack of training qualifications.  (*Id.* ¶ 29).  On or about March 14, 2022, UPS terminated Plaintiff's employment.  (*Id.* ¶ 30).  Plaintiff alleges that he was terminated in retaliation for reporting that Ms. Bermudes was unqualified to perform her job duties in violation of UPS policy and federal and state transportation regulations.  (*Id.* ¶¶ 38–39).

### B.      Procedural History

Plaintiff initiated this action in the Superior Court of New Jersey on January 18, 2023, alleging two causes of action against Defendant for violations of (i) CEPA (Count I), (ii) and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1 *et. seq.* (Count II).  (*Id.* ¶¶ 37–52).[1]  On February 28, 2023, Defendant removed the case to this Court.  (D.E. No. 1).  On March 7, 2023, Defendant moved to dismiss Plaintiff's CEPA and NJLAD claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Motion; D.E. No. 3-1 ("Mov. Br.")).  On March 20, 2023, the parties filed a stipulation of dismissal, agreeing to dismiss Plaintiff's claim against Defendant arising out of alleged violations of the NJLAD.  (D.E. No. 8).  As such, only Plaintiff's CEPA claim remains before the Court.  (*Id.*; Compl.).  On April 1, 2023, Plaintiff filed an opposition to Defendant's motion to dismiss and on April 24, 2023, Defendant filed a reply.  (D.E. No. 11 ("Opp. Br.") & D.E. No. 20 ("Reply")).

## II.     LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset*

---

[1]      In his Complaint, Plaintiff names UPS as a Defendant which was allegedly Plaintiff's "employer."  (Compl. ¶ 4).  He also names as Defendants (i) John Does (1-10) and Jane Does (1-10), who were allegedly supervisory individuals employed by Defendant UPS; and (ii) XYZ Corp., Inc (1-10), which was also allegedly Plaintiff's "employer."  (*Id.* ¶¶ 5–6).

*Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id*. at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that pursuant to Rule 12(b)(6) the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).  Thus, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug.

26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at

*2 (D.N.J. July 25, 2019)).

## III.   DISCUSSION

CEPA is New Jersey's "whistle-blower" statute.   N.J.S.A. § 34:19–1 *et seq.*   "The

Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical

workplace activities and to discourage public and private sector employers from engaging in such

conduct.'"  *Dzwonar v. McDevitt,* 828 A.2d 893, 900 (N.J. 2003) (quoting *Abbamont v. Piscataway*

*Twp. Bd. of Educ.,* 650 A.2d 958, 971 (N.J. 1994)).   In relevant part, the statute provides that:

> An employer shall not take any retaliatory action against an
> employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public
> body an activity, policy or practice of the employer . . . that the
> employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation
> > promulgated pursuant to law[;] . . . or
> >
> > (2) is fraudulent or criminal . . . .
>
> c. Objects to or refuses to participate in any activity, policy or
> practice which the employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation
> > promulgated pursuant to law[;] . . . [or]
> >
> > (2) is fraudulent or criminal[;]. . . [or]
> >
> > (3) is incompatible with a clear mandate of public policy
> > concerning the public health, safety or welfare or protection
> > of the environment.

N.J.S.A. § 34:19–3.  Relevant here, to support a CEPA claim, a plaintiff must allege that (i) he

reasonably believed that his employer's conduct violated either a law, or a rule or regulation

promulgated pursuant to law, or a clear mandate of public policy; (ii) he performed a whistle-

blowing activity described in N.J.S.A. § 34:19–3(a)(1), (c)(1), or (c)(3); (iii) an adverse employment action was taken against him; and (iv) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999) (quoting *Kolb v. Burns*, 727 A.2d 525, 530–31 (N.J. Super. Ct. App. Div. 1999)).

Here, Defendant asserts that Plaintiff has failed to plead the first and fourth required elements of a claim under CEPA. First, Defendant contends that Plaintiff has failed to allege facts to show that he reasonably believed that Defendant's conduct violated either a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy. (Mov. Br. at 8–9). Second, Defendant contends that Plaintiff has failed to adequately plead that a causal connection exists between Plaintiff's whistle-blowing activity and the adverse employment action. (*Id.* at 4–8). The Court will address each of Defendant's arguments in turn.

### A.  Reasonable Belief

Defendant asserts that Plaintiff has failed to plead the first required element of a claim under CEPA. More specifically, Defendant contends that Plaintiff has failed to allege facts to show that he reasonably believed that Defendant's conduct violated either a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy. (*Id.* at 8–9). Defendant argues that Plaintiff has made no effort to explain to the Court what a "1094" examination is and has failed to allege why he believed that Ms. Bermudes's failure to pass such a 1094 examination constituted a violation of federal and state transportation regulations. (*Id.*). In opposition, Plaintiff contends that he reasonably believed that a violation of 49 CFR §§ 380.301, 303 and 305 had occurred when Ms. Bermudes admitted to him, following her transfer to New Jersey, that her former Louisville, Kentucky supervisor "rubber-stamped" her 1094 examination.

6

(Opp. Br. at 10–15).  For the reasons set forth below, the Court agrees with Defendant and finds that Plaintiff has failed to plead the first required element of a claim under CEPA.

The first prong of a CEPA claim requires the plaintiff to identify a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy that the plaintiff reasonably believes the defendant violated.  *Hitesman v. Bridgeway, Inc.*, 93 A.3d 306, 320 (N.J. 2014) (citing N.J.S.A. §§ 34:19–3(a)(1), (c)(1) & (c)(3)).  A certain degree of specificity is required by a plaintiff to allege the first element of a CEPA claim.  The New Jersey Supreme Court has stated the standard as follows:

> [T]hus, to present a cognizable retaliation claim . . . under N.J.S.A. 34:193(a)(1) and (c)(1), or . . .  under N.J.S.A. 34:19–3(c)(3), a plaintiff must present authority meeting the statutory criteria that serves as a standard for the employer's conduct.  In the absence of such authority, the CEPA claim fails.

*Hitesman*, 93 A.3d AT 322; *see also Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 627 (N.J. 2013) ("[I]t is critical to identify the evidence that an aggrieved employee believes will support the CEPA recovery with care and precision.  Vague and conclusory complaints . . . are not the sort of things that the Legislature intended to be protected by CEPA.").  Accordingly, whether a CEPA plaintiff alleges employer conduct incompatible with a law, or a rule or regulation promulgated pursuant to law under N.J .S.A. §§ 34:19–3(a)(1) or (c)(1), or a clear mandate of public policy under N.J.S.A. § 34:19–3(c)(3), the plaintiff "must identify the authority that provides a standard against which the conduct of the defendant may be measured."  *Hitesman*, 93 A.3d at 320.  In other words, a CEPA plaintiff must identify the law, or rule or regulation promulgated pursuant to law, or clear mandate of public policy that the plaintiff reasonably believes the defendant violated.  *Id.* A clear mandate of public policy under N.J.S.A. § 34:19–3(c)(3) "suggests an analog to a constitutional provision, statute, and rule or regulation *promulgated pursuant to law* such that,

7

under Section 3c(3), there should be a high degree of public certitude in respect of acceptable versus unacceptable conduct." *Maw v. Advanced Clinical Comms., Inc.*, 846 A.2d 604, 607 (N.J. 2004) (emphasis in original). "'A vague, controversial, unsettled, or otherwise problematic public policy does not constitute a clear mandate.'" *Smith-Bozarth v. Coal. Against Rape & Abuse, Inc.*, 747 A.2d 322, 325 (N.J. Super. Ct. App. Div. 2000), *abrogated on other grounds by Dzwonar*, 828 A.2d at 893 (quoting *MacDougall v. Weichert*, 677 A.2d 162, 167 (N.J. 1996)). "Sources of public policy include the United States and New Jersey Constitutions; federal and state laws and administrative rules, regulations and decisions; the common law and specific judicial decisions; and in certain cases, professional codes of ethics." *MacDougall*, 677 A.2d at 167. "Therefore, a plaintiff who pursues a CEPA claim under subsection (c)(3) may rely upon the same laws, rules and regulations that may be the subject of a claim under subsection (c)(1)." *Turner v. Associated Humane Societies, Inc.*, 935 A.2d 825, 832 (N.J. Super. Ct. App. Div. 2007) (cleaned up).

A plaintiff need not prove that a law or public policy was actually violated, just that he reasonably believed it was violated. *Dzwonar*, 828 A.2d at 900–01; *see also Robert v. Autopart Int'l*, No. 14-07266, 2015 WL 4031740, at *2 (D.N.J. June 30, 2015). To determine whether a plaintiff's belief was reasonable, the court must make a threshold determination that a substantial nexus exists between the complained-of conduct and the law or public policy plaintiff believed was violated. *Telger v. Global Spectrum*, 291 F. Supp. 3d 565, 580 (D.N.J. 2018). In other words, a close relationship between the alleged misconduct and the supposedly violated law or public policy needs to exist. *Id.* Plaintiffs are required to identify with a minimum amount of specificity the law or public policy that they believe was violated so that the court can make this determination. *See Safonof v. DirectSat USA*, No. 19-07523, 2020 WL 1527946, at *3 (D.N.J. Mar. 31, 2020).

Here, Plaintiff fails to adequately allege a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy that he believes was violated by Defendant. *See* N.J.S.A. § 34:19-3(a)(1), (c)(1) & (c)(3).[2]   In his Complaint, Plaintiff generally alleges that Ms. Bermudes's "failure to be properly qualified was a violation of federal and state transportation regulations relating to the minimum requirements for trainers." (Compl. ¶ 25).   And he further generally alleges that Defendant "was in violation of the law by allowing her to continue to serve in her position as Trainer." (*Id.* ¶ 28; *see also id.* ¶ 31 ("Ms. Bermudes has still not passed the 1094 Qualification, which is still a violation of federal transportation regulations.")).   However, Plaintiff's Complaint neither specifies what law, rule, regulation, or clear mandate of public policy he reasonably believed Defendant was in violation of, nor provides sufficient factual allegations for the Court to make such a determination on its own.   As such, Plaintiff's allegations as pleaded fail to satisfy the first prong of a CEPA claim. *See Scioscia v. Walmart Corp.*, No. 23-01940, 2023 WL 8237407, at *2 (D.N.J. Nov. 28, 2023) (dismissing CEPA claim where plaintiff's complaint did not specify what law, rule, regulation, or clear mandate of public policy plaintiff reasonably believed defendant was in violation of and did not provide sufficient factual allegations for the court to make such a determination on its own); *Goins v. Newark Hous. Auth.*, No. 15-2195, 2019 WL 1417850, at *19 (D.N.J. Mar. 29, 2019), *on reconsideration in part*, No. 15-2195, 2019 WL 6769266 (D.N.J. Dec. 11, 2019) (rejecting CEPA claim because plaintiff "ha[d] failed to identify

---

[2]        It is unclear under what provision of CEPA Plaintiff brings his claim. (*See generally* Complaint).   In his Opposition Brief, Plaintiff cites to both N.J.S.A. § 34:19–3(a) and N.J.S.A. § 34:19–3(c).   However, Plaintiff makes no argument as to how Defendant's conduct was fraudulent or criminal under N.J .S.A. §§ 34:19–3(a)(2) or (c)(2), and only appears to contend that Defendant's conduct was inconsistent with a law, or a rule or regulation promulgated pursuant to law, under N.J .S.A. §§ 34:19–3(a)(1) or (c)(1), or a clear mandate of public policy under N.J.S.A. § 34:19–3(c)(3). (Opp. Br. at 7–9).   As such, the Court construes Plaintiff's Complaint as raising a claim under N.J.S.A. §§ 34:19–3(a)(1), (c)(1), and (c)(3).   The Supreme Court of New Jersey has concluded that whether a CEPA plaintiff alleges employer conduct incompatible with a law, or a rule or regulation promulgated pursuant to law under N.J .S.A. §§ 34:19–3(a)(1) or (c)(1), or a clear mandate of public policy under N.J.S.A. § 34:19–3(c)(3), the plaintiff "must identify the authority that provides a standard against which the conduct of the defendant may be measured." *Hitesman*, 93 A.3d at 320.

the legal violations she reported, and the court w[ould] not speculate as to what they were");
*Gaglione v. New Cmty. Corp.*, No. A-1015-06T1, 2007 WL 2141429, at *3 (N.J. Super. Ct. App. Div. July 27, 2007) (holding that allegations that defendant violated "Federal tax laws" was not sufficiently specific to state a CEPA claim); *Kerrigan v. Otsuka Am. Pharm., Inc.*, No. 12-4346, 2015 WL 5964982, at *3 (E.D. Pa. Oct. 14, 2015) (finding that plaintiff's conclusory allegation that "FDA regulations" were violated was inadequate to state a claim under CEPA where plaintiff did not identify a particular FDA regulation that was violated).[3]

In opposition, Plaintiff contends that he reasonably believed that a violation of 49 CFR §§ 380.301, 303 and 305 had occurred, when Ms. Bermudes admitted to him, following her transfer to New Jersey, that her former Louisville, Kentucky supervisor "rubber-stamped" her 1094 examination.  (Opp. Br. at 10–15).  However, Plaintiff at no point alleges in his Complaint that he reasonably believed that Defendant violated 49 CFR §§ 380.301, 303 and 305 by rubber-stamping Ms. Bermudes's 1094 examination, as is required to state a claim.[4]  *See Hitesman*, 218 93 A.3d at 320.  And his opposition brief may not amend his Complaint to satisfy this requirement.  *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." (citation omitted)); *Scioscia*, 2023 WL 8237407, at *2 n.3 (dismissing CEPA claim and rejecting plaintiff's

---

[3]      Plaintiff's allegation that Ms. Bermudes's failure to be properly qualified was "in violation of UPS policy" is also unavailing given that CEPA does not cover internal rule violations.  (Compl. ¶ 24); *see Fischer v. G4S Secure Sols. USA, Inc.*, 614 F. App'x 87, 92 (3d Cir. 2015); *Dzwonar*, 828 A.2d at 904.

[4]      49 CFR §§ 380.301, 303 and 305 appear to set forth certain requirements that an individual needs to meet to qualify as a driver-instructor.  *See generally* 49 CFR §§ 380.301, 303 & 305.  However, as Defendant points out (Reply at 14), none of these regulations reference any requirement to pass a 1094 examination.  *See generally* 49 CFR §§ 380.301, 303 & 305.  And Plaintiff provides no explanation in his Opposition Brief to show the Court why a failure to pass a 1094 examination would contravene 49 CFR §§ 380.301, 303 & 305.  (*See generally* Opp. Br. at 11–14).  As such, even if such allegations appeared in the Complaint, it is not clear to the Court why Plaintiff believed that a violation of 49 CFR §§ 380.301, 303 and 305 had occurred, when Ms. Bermudes admitted to him, following her transfer to New Jersey, that her former Louisville, Kentucky supervisor "rubber-stamped" her 1094 examinations.

attempt to identify a law, or a rule or regulation promulgated pursuant to law, or clear mandate of public policy for the first time in the opposition brief).  As such, Plaintiff's allegations as pleaded fail to satisfy the first prong of a CEPA claim.

### B.    Causal Connection

Plaintiff has also failed to plead the fourth required element of a claim under CEPA.  In its Moving Brief, Defendant contends that Plaintiff has failed to adequately allege that a causal connection exists between the whistle-blowing activity and the adverse employment action, in part because there is no temporal proximity between Plaintiff's alleged whistle-blowing activity and his termination, and because Plaintiff has failed to allege any other circumstantial facts suggesting a causal link.  (Mov. Br. at 4–6).  In Opposition, Plaintiff argues that he has sufficiently alleged a causal connection between the whistle-blowing activity and the adverse employment action because he pleads that he was subjected to a retaliatory faux investigation shortly after he complained about Ms. Bermudes's lack of qualifications.  (Opp. Br. at 17).  And regardless, he contends that Defendant's prolonged investigation into his alleged misconduct cannot cut off the causal connection between his complaints about Ms. Bermudes and his eventual termination.  (*Id.* at 19).  For the reasons set forth below, the Court agrees with Defendant and finds that Plaintiff has failed to adequately plead the fourth required element of a claim under CEPA.

To satisfy the causation prong of a CEPA claim, "a plaintiff must show that the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'"  *Robles v. U.S. Envtl. Univ. Svcs., Inc.*, 469 F. App'x 104, 108 (3d Cir. 2012) (quoting *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001)).  To determine whether a causal connection exists between a plaintiff's protected activity and the adverse employment action, courts should consider all the circumstances surrounding the employment decision.  *See Maimone*

*v. City of Atl. City*, 903 A.2d 1055, 1064 (N.J. 2006) (citing *Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 551 (N.J. 2000)).  A causal connection may be established by showing (i) "an unusually suggestive temporal proximity" between the protected conduct and the adverse action or (ii) "a pattern of antagonism coupled with timing."  *Martone v. Jet Aviation Flight Servs. Inc.*, No. 19-21011, 2020 WL 3969919, at *5 (D.N.J. July 13, 2020) (citing *Clark v. Philadelphia Hous. Auth.*, 701 F. App'x 113, 116 (3d Cir. 2017)).  Temporal proximity raises an inference that the protected activity was the likely reason for the adverse action.  *Campbell v. Abercrombie & Fitch, Co.*, No. 03-3159, 2005 WL 1387645, at *7 (D.N.J. June 9, 2005) (citing *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997)).  However, "the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two.'"  *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997)).  In some circumstances, temporal proximity between whistle-blowing activity and adverse action against an employee is so "unusually suggestive" of retaliatory conduct as to obviate the need for additional allegations to establish the causal nexus.  *Id*.  However, "[w]here the timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link."  *Id*.

Here, the Court finds that Plaintiff has failed to plead the fourth required element of a claim under CEPA.[5]  First, Plaintiff fails to allege facts that would show an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action to give rise to an inference of causation.  As recounted above, Plaintiff alleges that he "immediately"

---

[5]    As stated above, it is unclear under what provision of CEPA Plaintiff brings his claim.  (*See generally* Complaint).  In his Opposition Brief, Plaintiff cites to both subsections N.J.S.A. § 34:19–3(a) and N.J.S.A. § 34:19–3(c).  (Opp. Br. at 7–8).  Regardless, the plaintiff must allege that a causal connection exists between the whistle-blowing activity and the adverse employment action.  *Blackburn.*, 179 F.3d at 92.

complained to his supervisors that Ms. Bermudes was not qualified to perform her job when, in or around March 2021, Ms. Bermudes was transferred to UPS's facility in New Jersey and admitted to Plaintiff that her Supervisor in Louisville had previously rubber-stamped her 1094 examination in 2020.  (Compl. ¶¶ 19–24).  Yet, Plaintiff alleges that he was not terminated from employment at UPS until March 14, 2022, nearly a year after engaging in the alleged protected activity.  (*Id.* ¶ 30).  There is nothing unusually suggestive about the timing of Plaintiff's termination, which occurred nearly one year after Plaintiff complained about Ms. Bermudes's lack of qualifications. As such, the approximately twelve-month lapse between the alleged protected activity and Plaintiff's ultimate termination is insufficient to plausibly raise an inference of causation, standing on its own.  *See, e.g.*, *Choy v. Comcast Cable Commc'ns, LLC*, 629 F. App'x 362, 365 (3d Cir. 2015) (finding that six-week period between protected activity and termination failed to raise an inference of causation); *Urey v. Grove City College*, 94 F. App'x 79, 81 (3d Cir. 2004) ("Generally, it can be said that 'if at least four months pass after the protected action without employer reprisal, no inference of causation is created.'" (quoting *Woods v. Bentsen*, 889 F. Supp. 179, 187 (E.D. Pa. 1995))); *Perry v. Lee*, No. 19-17899, 2020 WL 3396805, at \*7 (D.N.J. June 19, 2020) (finding that plaintiff failed to adequately allege causal connection for CEPA claim based on temporal proximity where plaintiff alleged that he was terminated nearly a year after engaging in any protected activity).

To be sure, Plaintiff does allege that he "*continued* to complain about Ms. Bermudes's inability to pass the 1094 qualification and that the Company was in violation of the law by allowing her to continue to serve in her position as Trainer."  (Compl. ¶ 28 (emphasis added); *see also id.* ¶ 24 ("Plaintiff immediately and *repeatedly* complained to his supervisors that Ms. Bermudes was not qualified to perform her job responsibilities" (emphasis added)).  However, as

Defendant points out (Mov Br. at 5–6), Plaintiff fails to allege when these continued complaints took place.  (*See* Compl.).  Without such additional allegations, the Court cannot infer that the temporal proximity between Plaintiff's alleged whistle-blowing activity and his ultimate termination is so "unusually suggestive" of retaliatory conduct as to obviate the need for additional allegations to establish the causal nexus, particularly since courts are "reluctant to infer a causal connection based on temporal proximity alone." *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014); *see also Figueroa v. Caliber Collision*, No. 22-1332, 2022 WL 9997786, at *3 (D.N.J. Oct. 17, 2022) (finding that plaintiff failed to adequately allege causal connection for CEPA claim in part where plaintiff only alleged that he was terminated shortly after he began whistle-blowing but did not allege when he complained).  And regardless, as Defendant points out (Mov. Br. at 6), even if some of Plaintiff's "continued" complaints occurred closer in time to his ultimate termination, Plaintiff provides no allegations to explain why, after submitting the same complaint to his supervisors multiple times, Defendant was finally motivated to terminate him.  *See, e.g., Borgese v. Dean Foods Co.*, No. 15-2907, 2017 WL 2780742, at *7 (D.N.J. June 26, 2017) ("Thus, the Court determines that there is not sufficient evidence in the record to determine causation based on Plaintiff's complaints over the years.  Simply put, Plaintiff provides no evidence explaining why, after four years, WhiteWave was finally motivated by those particular complaints to terminate him.") (cleaned up)).  In sum, the approximately twelve-month lapse between the alleged protected activity and Plaintiff's ultimate termination is insufficient to plausibly raise an inference of causation, standing on its own.

Second, Plaintiff has failed to allege facts that would show a pattern of antagonism coupled with timing to support causal connection.  Even when a complaint fails to allege unusually suggestive temporal proximity, a plaintiff may still plausibly raise an inference of causation from

other facts.  More specifically, causation may be inferred "from the circumstances surrounding the employment action including . . . inconsistencies or contradictions in the employer's proffered legitimate reasons for its action," and "circumstantial evidence of a pattern of antagonism following plaintiff's protected conduct."  *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 856 (D.N.J. 2019).  Here, the facts pleaded in the Complaint do not suggest a pattern of antagonism, let alone one that emerged because Plaintiff reported Ms. Bermudes's lack of qualifications.  To be sure, Plaintiff alleges that after he reported Ms. Bermudes's lack of qualifications, Ms. Bermudes complained that Plaintiff had engaged in inappropriate speech and UPS launched an investigation into her claims from July 2021 to February 2022.  (Compl. ¶¶ 26–27).  However, the Court cannot say that UPS's investigation into Plaintiff's alleged misconduct plausibly amounts "to a *pattern* of antagonism so as to bridge the large gap in temporal proximity and suggest a causal connection between the protected activity and Plaintiff's termination."  *Newton-Haskoor v. Coface N. Am.*, No. 11-3931, 2012 WL 1813102, at *6 (D.N.J. May 17, 2012), *aff'd*, 524 F. App'x 808 (3d Cir. 2013) (emphasis added); *see also Duong v. Benihana Nat'l Corp.*, No. 21-1088, 2022 WL 1125392, at *5 (3d Cir. Apr. 15, 2022) ("Duong does not point to any evidence that shows 'a pattern of antagonism' . . . one description of an isolated incident does not reflect a pattern of mischaracterizing Duong's conduct or otherwise antagonizing him."); *but see Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993) (finding a pattern of antagonism through the "constant barrage of written and verbal warnings" filed against the plaintiff by defendant employer).  This is particularly so given that Plaintiff does not allege that he "experience[d] any reduction in compensation, nor did he suffer any adverse consequences effecting his title, duties, or job function" in the period leading up to his termination.  *Chang v. Bank of New York Mellon Corp.*, No. 17-11061, 2021 WL 1207475, at *5 (D.N.J. Mar. 31, 2021) (finding that the

circumstances leading up to plaintiff's termination did not suggest any pattern of antagonism where the plaintiff did not experience any reduction in compensation, nor did he suffer any adverse consequences effecting his title, duties, or job function.).  And Plaintiff makes no argument in his Opposition Brief to show how UPS's investigation into Plaintiff's alleged misconduct amounted to a pattern of antagonism.  (*See generally* Opp. Br.).  Nor has Plaintiff alleged any other facts such that causation could be inferred from the circumstances surrounding the employment action. For example, there is no allegation that Defendant offered inconsistent explanations for Plaintiff's termination.  *See Waddell v. Small Tube Prod. Inc.*, 799 F.2d 69, 73 (3d Cir. 1986) (finding it would be appropriate for a district court to take inconsistent explanations into account when looking for the causation necessary to satisfy a *prima facie* case).  In sum, Plaintiff fails to allege temporal proximity or any other circumstantial facts suggesting a causal link indicating that his termination was retaliation for his complaints about Ms. Bermudes.

Plaintiff's arguments in Opposition are unavailing.  To start, Plaintiff suggests that UPS's investigation into his alleged misconduct itself constituted an adverse employment action.  (Opp. Br. at 17).  As such, Plaintiff contends that he has plausibly alleged causation because this investigation into his alleged misconduct was initiated shortly after he reported Ms. Bermudes's lack of qualifications.  (*Id.* at 17–19).  The Court is not persuaded.  As an initial matter, as Defendant points out (Reply at 5–8), it is not clear that Defendant's investigation into Plaintiff's alleged misconduct constitutes an adverse employment action under CEPA.  CEPA defines "retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. § 34:19-2(e).  Accordingly, "[n]ot everything that makes an employee unhappy is an actionable adverse action."  *Cokus v. Bristol Myers Squibb Co.*, 827 A.2d 1173, 1180 (N.J. Super.

Ct. Law Div. 2002), *aff'd*, 827 A.2d 1098 (N.J. Super. Ct. App. Div. 2003) (quoting *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)).  The definition of retaliatory action "speaks in terms of completed action . . . . [It] does not encompass action taken to effectuate the discharge, suspension or demotion."  *Keelan v. Bell Commc'ns Res.*, 674 A.2d 603, 607 (N.J. Super. Ct. App. Div. 1996) (internal quotation marks omitted).  As such, "an investigation of an employee is not normally considered retaliation."  *Beasley v. Passaic County*, 873 A.2d 673, 684–85 (N.J. Super. Ct. App. Div. 2005) (citation omitted).  Accordingly, the Court cannot say that Defendant's investigation into Plaintiff's alleged misconduct as reported by Ms. Bermudes constituted an adverse employment action.  *Sattelberger v. Twp. of Byram*, No. A-0468-07T1, 2008 WL 4391155, at *6–7 (N.J. Super. Ct. App. Div. Sept. 30, 2008) (investigating an employee's activities did not constitute an adverse employment action under CEPA).

However, even if UPS's investigation into Plaintiff's alleged misconduct did constitute an adverse employment action, Plaintiff still fails to adequately allege a causal connection between Plaintiff's protected activity and the investigation.  As an initial matter, Plaintiff fails to allege facts that would show an unusually suggestive temporal proximity between his complaints about Ms. Bermudes and the allegedly retaliatory investigation to give rise to an inference of causation.  As recounted above, Plaintiff alleges that he "immediately" complained to his supervisors that Ms. Bermudes was not qualified to perform her job when, in or around March 2021, Ms. Bermudes was transferred to UPS's facility in New Jersey and admitted to Plaintiff that her Supervisor in Louisville had previously rubber-stamped her 1094 examination in 2020.  (Compl. ¶¶ 19–24).  Yet, Plaintiff alleges that UPS did not launch its investigation into Plaintiff's alleged misconduct until July 2021, nearly four months after Plaintiff engaged in the alleged protected activity.  (*Id.* ¶ 27).  There is nothing unusually suggestive about the timing of Defendant's investigation into Plaintiff.

*See, e.g.*, *Choy*, 629 F. App'x at 365 (finding that six-week period between protected activity and termination failed to raise an inference of causation); *Young*, 897 A.2d at 1073–74 (holding that plaintiff's termination four months after whistle-blowing activity did not, without more, suggest causal link).   And though Plaintiff does allege that he "*continued* to complain" about Ms. Bermudes's inability to pass the 1094 qualification examination (Compl. ¶ 28 (emphasis added)), Plaintiff fails to allege when these continued complaints took place.   (*See id.*).   Without such additional allegations, the Court cannot infer that the temporal proximity between Plaintiff's alleged whistle-blowing activity and the investigation into his alleged misconduct is so "unusually suggestive" of retaliatory conduct as to obviate the need for additional allegations to establish the causal nexus.   *Figueroa*, 2022 WL 9997786, at *3.   And Plaintiff fails to allege any other circumstantial facts suggesting a causal link indicating that the investigation into his alleged misconduct was retaliation for his complaints about Ms. Bermudes.   As such, even if UPS's investigation into Plaintiff's alleged misconduct did constitute an adverse employment action, Plaintiff still fails to adequately allege a causal connection between Plaintiff's protected activity and the investigation.

Next, Plaintiff argues that UPS should not benefit from having prolonged its investigation into Plaintiff's alleged misconduct, thereby extending the temporal gap between Plaintiff's alleged protected activity and his termination.   (Opp. Br. at 19).   However, as explained above, even if the Court were to measure the temporal gap from Plaintiff's alleged whistle-blowing activity to the *start* of UPS's investigation into Plaintiff's alleged misconduct, the Court still finds that this approximately four-month lapse is insufficient to plausibly raise an inference of causation, standing on its own.   As such, Plaintiff's argument is unavailing.[6]

---

[6]   Plaintiff appears to ask the Court to draw an inference of causation from the fact that he was terminated less than a month after UPS completed its investigation into Plaintiff's alleged misconduct.   (Opp. Br. at 19).   This is of

Further, Plaintiff appears to ask the Court to draw an inference of causation from the fact that he was subjected to a faux investigation and terminated despite having enjoyed a lengthy tenure working for Defendant with multiple promotions.  (Opp. Br. at 17–18).  The Court is not convinced.  "Years of service, without more, is insufficient to establish causation."  *Davis v. Supervalu, Inc.*, No. 13-0414, 2013 WL 1704295, at \*6 (D.N.J. Apr. 19, 2013).  Here, Plaintiff's length of service is not probative of whether Defendant terminated Plaintiff in retaliation for his complaints about Ms. Bermudes, particularly since Plaintiff has failed to allege any other circumstantial facts suggesting a causal link.  *Cf. id.* (finding allegation that the plaintiff worked for the defendant for more than twenty years insufficient to establish causation).  As such, the Court finds Plaintiff's argument unpersuasive.[7]

## IV.   CONCLUSION

In sum, because Plaintiff has failed to adequately allege the first and fourth required elements of a CEPA claim, the Court finds that Plaintiff's CEPA claim cannot proceed as pled and must be dismissed.  However, it is dismissed *without prejudice*.  The Court cannot rule out the possibility that Plaintiff might plausibly allege that (i) he reasonably believed that his employer's conduct violated either a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy; and (ii) a causal connection exists between the whistle-blowing activity and the adverse employment action.

---

no moment.  While it may be true that UPS terminated Plaintiff less than a month after it completed its investigation into Plaintiff's alleged misconduct, it did not initiate its investigation into Plaintiff's alleged misconduct until nearly four months after Plaintiff engaged in the alleged protected activity.  As already discussed, there is nothing unusually suggestive about the timing of Defendant's investigation into Plaintiff.  *See, e.g.*, *Choy*, 629 F. App'x at 365.

[7]      Because Plaintiff fails to allege facts indicating temporal proximity or any other circumstantial facts suggesting a causal link suggesting that his termination was retaliation for his complaints about Ms. Bermudes, the Court does not consider Defendant's additional arguments that attack Plaintiff's allegations for failing to adequately plead a causal connection.  (See Mov. Br. at 6–8; Reply at 9–12).

Based on the foregoing, Defendant's motion (D.E. No. 3) is **GRANTED**, and Plaintiff's Complaint is dismissed *without prejudice*.  An appropriate Order follows.

**Dated:** December 29, 2023                                         *s/ Esther Salas*
                                                                    **Esther Salas, U.S.D.J.**