Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOSEPH PASKAS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED PARCEL SERVICE, INC.** *et al.*,<br><br>**Defendants.** | **Civil Action No.: 23-1162 (ES) (CLW)**<br><br>**OPINION** |

SALAS, DISTRICT JUDGE

Plaintiff Joseph Paskas filed this action for alleged violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, *et seq.* (D.E. No. 32 ("Amended Complaint" or "Am. Compl.")). Before the Court is United Parcel Service, Inc.'s ("UPS" or "Defendant") motion to dismiss the Amended Complaint. (D.E. No. 34 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendant's Motion is **GRANTED,** and Plaintiff's Amended Complaint is dismissed *with prejudice*.

## I.    BACKGROUND

### A.    Factual Allegations

According to the Amended Complaint, on or about June 7, 2004, UPS hired Plaintiff to work as a Driver. (Am. Compl. ¶ 8). After working as a Driver for approximately six months, Plaintiff was promoted to the position of On-Road Supervisor. (*Id.* ¶ 9). In or around 2014, Plaintiff became a Driving Instructor at UPS's Driving Training School in Chicago, Illinois, and

in 2015, Plaintiff was promoted to the position of On-Road Manager at UPS's Meadowlands, New Jersey Facility. (*Id.* ¶¶ 11 & 13). Plaintiff alleges that he routinely received favorable performance evaluations from his supervisors in all of these roles at UPS. (*Id.* ¶¶ 10, 12 & 14). On or about October 11, 2017, Plaintiff was allegedly promoted to the position of Staff Level Division Manager and worked in that position first in New York and then in New Jersey. (*Id.* ¶ 15). As Staff Level Division Manager, Plaintiff was responsible for over 900 employees. (*Id.* ¶ 16).

According to the Amended Complaint, in or around March 2021, Emily Bermudes, a Feeder On-Road Supervisor in Louisville, was transferred to UPS's facility in New Jersey. (*Id.* ¶¶ 25 & 27). After her transfer, Ms. Bermudes was required to complete a 1094 recertification examination so that she could work as an On-Road Supervisor in New Jersey. (*Id.* ¶ 28). Although Ms. Bermudes advised Plaintiff that she had satisfied her 1094 certification requirement in 2020, Plaintiff alleges that she did not pass the 1094 recertification examination in 2021. (*Id.* ¶¶ 26 & 29). Plaintiff claims that when he began to investigate why Ms. Bermudes had difficulty in passing the 2021 1094 certification examination, Ms. Bermudes admitted that she did not successfully pass her 1094 certification in 2020 and explained that her "2020 1094 certification was fraudulently filled out and that her supervisor in Louisville 'rubber-stamped' it." (*Id.* ¶¶ 31–32).

Plaintiff alleges that upon learning this information, he "immediately" complained to his supervisors that Ms. Bermudes was unqualified to perform her job duties in violation of UPS policy and federal transportation regulations. (*Id.* ¶ 33). According to the Amended Complaint, UPS's On-Road Supervisors, such as Ms. Bermudes, are responsible for supervising the daily performance of service providers to ensure quality service, improve performance, and maintain compliance with environmental, health and safety requirements, and must be certified by the U.S. Department of Transportation (DOT). (*Id.* ¶ 17). In fact, Plaintiff alleges that the Federal Motor

Carrier Safety Regulations at 49 C.F.R. Part 380 establish minimum training requirements for Longer Combination Vehicle (LCV) operators and minimum qualification requirements for LCV driver-instructors, which include UPS's On-Road Supervisors such as Ms. Bermudes. (*Id.* ¶¶ 18–20). Plaintiff points out that pursuant to 49 C.F.R. § 380.305(a), "no motor carrier shall knowingly allow, require, permit, or authorize a driver-instructor in its employ to provide LCV driver training unless such person is a qualified LCV driver-instructor under the requirements of Part 380, Subpart C." (*Id.* ¶ 21). Further, Plaintiff alleges that pursuant to 49 C.F.R. § 380.305(b), "a motor carrier that employs qualified LCV driver-instructors shall provide evidence of the certifications required by 49 C.F.R. § 380.301 or § 380.303 when requested by an authorized [Federal Motor Carrier Safety Administration (FMCSA)], State, or local official in the course of a compliance review." (*Id.* ¶ 22). Plaintiff alleges that to meet the requirements of "49 C.F.R. § [3]80.305,[1] Defendant UPS requires its On-Road Supervisors to obtain a 1094 certification on an annual basis." (*Id.* ¶ 24). Accordingly, once Plaintiff learned that Ms. Bermudes was unable to pass her 1094 certification, which was fraudulently "rubber stamped" by a Supervisor in Louisville in 2020, Plaintiff alleges that he immediately complained to his supervisors that Ms. Bermudes was unqualified to perform her job duties as an LCV driver-instructor in violation of UPS policy and federal regulations, specifically 49 C.F.R. § 380.305. (*Id.* ¶ 33). Plaintiff alleges that he continued to report Ms. Bermudes's lack of qualifications to UPS over "several months after Ms. Bermudes was transferred to New Jersey." (*Id.* ¶ 36).

---

[1] In alleging that Defendant UPS requires its On-Road Supervisors to obtain a 1094 certification on an annual basis to meet federal transportation regulations, Plaintiff cites to 49 C.F.R § 280.305. (Am. Compl. ¶ 24). Nevertheless, as Defendant points out (Mov. Br. at 12 n.3), because the Amended Complaint otherwise references 49 C.F.R § 380.305, it appears that Plaintiff made a typographical error and actually intended to cite to 49 C.F.R § 380.305 rather than 49 C.F.R § 280.305.

According to the Amended Complaint, after Plaintiff alerted his supervisors that Ms. Bermudes was not qualified to perform her job responsibilities, in August of 2021 Ms. Bermudes reported Plaintiff and other UPS employees for engaging in inappropriate speech towards her. (*Id.* ¶ 37). "As part of Ms. Bermudes' August 2021 complaint, Ms. Bermudes admitted to Defendant UPS that she had failed her 1094 recertification examination, was unable to pass her 1094 recertification examination in the five months since she transferred to New Jersey and was afraid of being terminated or losing the additional pay she received as an On-Road Supervisor." (*Id.* ¶ 38). Plaintiff alleges that UPS investigated Ms. Bermudes's complaint between August 2021 and February 2022. (*Id.* ¶ 39). However, Plaintiff claims that UPS never launched an investigation into his complaints about Ms. Bermudes's lack of training qualifications. (*Id.* ¶ 40). Thereafter, on or about March 14, 2022, UPS terminated Plaintiff's employment. (*Id.* ¶ 42). Plaintiff alleges that he was terminated in retaliation for reporting that Ms. Bermudes was unqualified to perform her job duties in violation of UPS policy and 49 C.F.R. § 380, which, as noted, establishes minimum training requirements for LCV operators and minimum qualification requirements for LCV driver-instructors, such as Ms. Bermudes. (*Id.* ¶ 48).

### B.    Procedural History

Plaintiff initiated this action in the Superior Court of New Jersey on January 18, 2023, alleging two causes of action against Defendant for violations of (i) CEPA (Count I), and (ii) the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1 *et. seq.* (Count II). (Ex. 1 to D.E. No. 1 ("Complaint" or "Compl.') ¶¶ 37–52). On February 28, 2023, Defendant removed the case to this Court under 28 U.S.C. §§ 1332 and 1441, based on diversity jurisdiction. (D.E. No. 1). On March 7, 2023, Defendant moved to dismiss Plaintiff's CEPA and NJLAD claims asserted in Plaintiff's original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

(*See* D.E. No. 3; D.E. No. 3-1 ("Mov. Br.")).  On March 20, 2023, the parties filed a stipulation of dismissal, agreeing to dismiss Plaintiff's claim against Defendant arising out of alleged violations of the NJLAD.  (D.E. No. 8).  As such, only Plaintiff's CEPA claim remained before the Court. (*Id.*; Compl.).

On December 29, 2023, the Court granted Defendant's motion to dismiss Plaintiff's CEPA claim as asserted in the original Complaint.  (D.E. Nos. 30 & 31).  First, the Court found that Plaintiff had failed to plead the first prong of a CEPA claim, which requires a plaintiff to identify a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy that the plaintiff reasonably believes the defendant violated.  (D.E. No. 30 ("December 29, 2023 Opinion") at 6–11).  The Court noted that Plaintiff only generally alleged that Ms. Bermudes's "failure to be properly qualified was a violation of federal and state transportation regulations relating to the minimum requirements for trainers."  (*Id.* at 9 (citing Compl. ¶ 25)).  However, the Court noted that Plaintiff's Complaint neither specified what law, rule, regulation, or clear mandate of public policy he reasonably believed Defendant was in violation of, nor provided sufficient factual allegations for the Court to make such a determination on its own.  (*Id.*).  Further, though Plaintiff contended in opposition that he reasonably believed that a violation of 49 C.F.R. §§ 380.301, 303 and 305 had occurred, when Ms. Bermudes admitted to him, following her transfer to New Jersey, that her former Louisville, Kentucky supervisor "rubber-stamped" her 1094 examination, the Court noted that it could not rely on those arguments because they were not alleged in the Complaint.  (*Id.* at 10).  And regardless, the Court noted that Plaintiff provided no explanation in his opposition brief to show the Court why a failure to pass a 1094 examination would contravene 49 C.F.R. §§ 380.301, 303 & 305.  (*Id.* at 10 n.4).  As such, the Court found that Plaintiff's allegations failed to satisfy the first prong of a CEPA claim.  (*Id.* at 11).

Second, the Court found that Plaintiff also failed to plead the fourth required element of a claim under CEPA—that a causal connection existed between Plaintiff's whistle-blowing activity and the adverse employment action. (*Id.* at 11–19). To start, the Court found that Plaintiff failed to allege facts that would show an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action to give rise to an inference of causation. (*Id.* at 12–13). Though Plaintiff alleged that he "immediately" complained to his supervisors that Ms. Bermudes was not qualified to perform her job when, in or around March 2021, Ms. Bermudes was transferred to UPS's facility in New Jersey, Plaintiff alleged that he was not terminated from employment at UPS until March 14, 2022, nearly a year after engaging in the alleged protected activity; as such, the Court found that there was nothing unusually suggestive about the timing of Plaintiff's termination. (*Id.* at 12–13). And though Plaintiff did allege that he "continued to complain about Ms. Bermudes's inability to pass the 1094 qualification," the Court noted that Plaintiff failed to allege when these continued complaints took place such that the Court could infer that the temporal proximity between Plaintiff's alleged whistle-blowing activity and his ultimate termination was so "unusually suggestive" of retaliatory conduct as to obviate the need for additional allegations to establish the causal nexus. (*Id.* at 13–14). And regardless, the Court explained that even if some of Plaintiff's "continued" complaints occurred closer in time to his ultimate termination, Plaintiff provided no allegations to explain why, after submitting the same complaint to his supervisors multiple times, Defendant was finally motivated to terminate him, such that the Court could infer that a causal connection existed between Plaintiff's whistle-blowing activity and the adverse employment action. (*Id.* at 14). Further, the Court found that Plaintiff had failed to allege facts that would show a pattern of antagonism coupled with timing to support an inference of causal connection. (*Id.* at 14–15). Though Plaintiff suggested that UPS's

investigation into Ms. Bermudes's complaint about Plaintiff constituted an adverse employment action, the Court noted that it could not so find, because an investigation of an employee is not normally considered retaliation. (*Id.* at 16–17). And regardless, the Court emphasized that even if UPS's investigation into Plaintiff's alleged misconduct did constitute an adverse employment action, Plaintiff still failed to adequately allege a causal connection between Plaintiff's protected activity and the investigation. (*Id.* at 17–18). As such, because Plaintiff failed to adequately allege the first and fourth required elements of a CEPA claim, the Court found that Plaintiff's CEPA claim could not proceed as pled and must be dismissed without prejudice. (*Id.* at 19).

On January 23, 2024, Plaintiff filed an Amended Complaint again asserting a claim against Defendant for violations of CEPA. (Am. Compl. ¶¶ 46–50).[2] On February 2, 2024, Defendant again moved to dismiss Plaintiff's Amended Complaint, arguing that Plaintiff's Amended Complaint fails to adequately address the pleading deficiencies this Court identified in previously dismissing Plaintiff's CEPA claim. (Motion; D.E. No. 34-1 ("Mov. Br.")). On February 19, 2024, Plaintiff filed an opposition to Defendant's motion to dismiss and on February 26, 2024, Defendant filed a reply. (D.E. No. 35 ("Opp. Br.") & D.E. No. 36 ("Reply")).

## II.    LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting

---

[2]    In his Amended Complaint, Plaintiff names UPS as a Defendant, which was allegedly Plaintiff's "employer." (Am. Compl. ¶ 5). He also names as Defendants (i) John Does (1-10) and Jane Does (1-10), who were allegedly supervisory individuals employed by Defendant UPS; and (ii) XYZ Corp., Inc (1-10), which was also allegedly Plaintiff's "employer." (*Id.* ¶¶ 6–7).

*James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that pursuant to Rule 12(b)(6) the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).  Thus, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

### III.    DISCUSSION

CEPA is New Jersey's "whistle-blower" statute.  N.J.S.A. § 34:19–1 *et seq.*  "The Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003) (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994)).  In relevant part, the statute provides that:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes:
>
>> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law[;] . . . or
>>
>> (2) is fraudulent or criminal . . . .
>
> c. Objects to or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
>> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law[;] . . . [or]
>>
>> (2) is fraudulent or criminal[;]. . . [or]
>>
>> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. § 34:19–3.  Relevant here, to support a CEPA claim, a plaintiff must allege that (i) he reasonably believed that his employer's conduct violated either a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy; (ii) he performed a whistle-blowing activity described in N.J.S.A. § 34:19–3(a)(1), (c)(1), or (c)(3); (iii) an adverse employment action was taken against him; and (iv) a causal connection exists between the whistle-

blowing activity and the adverse employment action. *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999) (quoting *Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999)).

Here, Defendant asserts that Plaintiff has failed to plead the first and fourth required elements of a claim under CEPA. First, Defendant contends that Plaintiff has failed to allege facts to show that he reasonably believed that Defendant's conduct violated either a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy. (Mov. Br. at 11–14). Second, Defendant contends that Plaintiff has failed to adequately plead that a causal connection exists between Plaintiff's whistle-blowing activity and the adverse employment action. (*Id.* at 5–11). The Court will address each of Defendant's arguments in turn.

### A.    Reasonable Belief

Defendant asserts that Plaintiff has failed to plead the first required element of a claim under CEPA. (*Id.* at 11–14). More specifically, Defendant contends that Plaintiff has failed to allege facts to show that he reasonably believed that UPS violated the law by failing to ensure that Ms. Bermudes obtained a proper 1094 certification. (*Id.* at 11). Defendant maintains that it is not enough that a CEPA retaliation claimant identify the law that was allegedly violated; the employee "must identify the authority that provides a standard against which the conduct of the defendant may be measured." (*Id.*). And here, though Plaintiff alleges that he believed UPS violated 49 C.F.R. § 380.305 by failing to ensure that Ms. Bermudes obtained a proper 1094 certification, Defendant points out that this regulation says nothing about passing a 1094 certification, and as such cannot provide a standard against which the conduct of the Defendant may be measured to satisfy the first required element of a claim under CEPA. (*Id.* at 12). In opposition, Plaintiff contends that he reasonably believed that a violation of 49 C.F.R. §§ 380.301, 303 and 305 had

occurred when Ms. Bermudes admitted to him, following her transfer to New Jersey, that her

former Louisville, Kentucky supervisor "rubber-stamped" her 1094 examination. (Opp. Br. at 11–

18). For the reasons set forth below, the Court agrees with Defendant and finds that Plaintiff has

again failed to plead the first required element of a claim under CEPA.

The first prong of a CEPA claim requires the plaintiff to identify a law, or a rule or

regulation promulgated pursuant to law, or a clear mandate of public policy that the plaintiff

reasonably believes the defendant violated. *Hitesman v. Bridgeway, Inc.*, 93 A.3d 306, 320 (N.J.

2014) (citing N.J.S.A. §§ 34:19–3(a)(1), (c)(1) & (c)(3)). A certain degree of specificity is required

by a plaintiff to allege the first element of a CEPA claim. The New Jersey Supreme Court has

stated the standard as follows:

> [T]hus, to present a cognizable retaliation claim . . . under N.J.S.A.
> 34:193(a)(1) and (c)(1), or . . . under N.J.S.A. 34:19–3(c)(3), a
> plaintiff must present authority meeting the statutory criteria that
> serves as a standard for the employer's conduct. In the absence of
> such authority, the CEPA claim fails.

*Hitesman*, 93 A.3d at 322; *see also Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 627 (N.J.

2013) ("[I]t is critical to identify the evidence that an aggrieved employee believes will support

the CEPA recovery with care and precision. Vague and conclusory complaints . . . are not the sort

of things that the Legislature intended to be protected by CEPA."). Accordingly, whether a CEPA

plaintiff alleges employer conduct incompatible with a law, or a rule or regulation promulgated

pursuant to law under N.J .S.A. §§ 34:19–3(a)(1) or (c)(1), or a clear mandate of public policy

under N.J.S.A. § 34:19–3(c)(3), the plaintiff "must identify the authority that *provides a standard*

*against which the conduct of the defendant may be measured*." *Hitesman*, 93 A.3d at 320

(emphasis added).[3] A clear mandate of public policy under N.J.S.A. § 34:19–3(c)(3) "suggests an

---

[3]        It is unclear under what provision of CEPA Plaintiff brings his claim. (*See generally* Am. Compl.). In his
Opposition Brief, Plaintiff cites to both N.J.S.A. § 34:19–3(a) and N.J.S.A. § 34:19–3(c). (Opp. Br. at 10). However,

analog to a constitutional provision, statute, and rule or regulation *promulgated pursuant to law* such that, under Section 3c(3), there should be a high degree of public certitude in respect of acceptable versus unacceptable conduct." *Maw v. Advanced Clinical Comms., Inc.*, 846 A.2d 604, 607 (N.J. 2004) (emphasis in original). "'A vague, controversial, unsettled, or otherwise problematic public policy does not constitute a clear mandate.'" *Smith-Bozarth v. Coal. Against Rape & Abuse, Inc.*, 747 A.2d 322, 325 (N.J. Super. Ct. App. Div. 2000), *abrogated on other grounds by Dzwonar*, 828 A.2d at 893 (quoting *MacDougall v. Weichert*, 677 A.2d 162, 167 (N.J. 1996)). "Sources of public policy include the United States and New Jersey Constitutions; federal and state laws and administrative rules, regulations and decisions; the common law and specific judicial decisions; and in certain cases, professional codes of ethics." *MacDougall*, 677 A.2d at 167. "Therefore, a plaintiff who pursues a CEPA claim under subsection (c)(3) may rely upon the same laws, rules and regulations that may be the subject of a claim under subsection (c)(1)." *Turner v. Associated Humane Societies, Inc.*, 935 A.2d 825, 832 (N.J. Super. Ct. App. Div. 2007) (cleaned up).

A plaintiff need not prove that a law or public policy was actually violated, just that he reasonably believed it was violated. *Dzwonar*, 828 A.2d at 900–01; *see also Robert v. Autopart Int'l*, No. 14-07266, 2015 WL 4031740, at *2 (D.N.J. June 30, 2015). "On a motion to dismiss in a CEPA case, it is the Court's role to 'make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the

---

Plaintiff makes no argument as to how Defendant's conduct was fraudulent or criminal under N.J .S.A. §§ 34:19–3(a)(2) or (c)(2), and only appears to contend that Defendant's conduct was inconsistent with a law, or a rule or regulation promulgated pursuant to law, under N.J.S.A. §§ 34:19–3(a)(1) or (c)(1), or a clear mandate of public policy under N.J.S.A. § 34:19–3(c)(3). (Opp. Br. at 11–12 & 17). As such, the Court construes Plaintiff's Amended Complaint as raising a claim under N.J.S.A. §§ 34:19–3(a)(1), (c)(1), and (c)(3). The Supreme Court of New Jersey has concluded that whether a CEPA plaintiff alleges employer conduct incompatible with a law, or a rule or regulation promulgated pursuant to law under N.J.S.A. §§ 34:19–3(a)(1) or (c)(1), or a clear mandate of public policy under N.J.S.A. § 34:19–3(c)(3), the plaintiff "must identify the authority that provides a standard against which the conduct of the defendant may be measured." *Hitesman*, 93 A.3d at 320.

plaintiff.'" *Myers v. Advanced Stores Co. Inc.*, No. 19-18183, 2020 WL 2744632, at *4 (D.N.J. May 27, 2020) (quoting *Dzwonar*, 828 A.2d at 901). In other words, a close relationship between the alleged misconduct and the supposedly violated law or public policy needs to exist. *Telger v. Global Spectrum*, 291 F. Supp. 3d 565, 581 (D.N.J. 2018). Plaintiffs are required to identify with a minimum amount of specificity the law or public policy that they believe was violated so that the court can make this determination. *See Safonof v. DirectSat USA*, No. 19-7523, 2020 WL 1527946, at *3 (D.N.J. Mar. 31, 2020). When none is forthcoming, the trial court should "enter judgment for [the] defendant." *Gaglione v. New Cmty. Corp.*, No. A-1015-06T1, 2007 WL 2141429, at *3 (N.J. Super. Ct. App. Div. Jul. 27, 2007); *see also Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 513 (N.J. 1980) ("If an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment.").

Here, the Court finds that Plaintiff has failed to adequately identify a identify a law, or a rule or regulation promulgated pursuant to law, or a clear mandate of public policy that bears a "*substantial nexus*" to his claim. In his Amended Complaint, Plaintiff alleges that he reasonably believed that UPS violated 49 C.F.R. § 380.305 when Ms. Bermudes admitted to him, following her transfer to New Jersey, that her former Louisville, Kentucky supervisor "rubber-stamped" her 1094 certification because, according to Plaintiff, UPS requires its On-Road Supervisors to obtain a 1094 certification on an annual basis to meet the requirements of 49 C.F.R. § 380.305. (Am. Compl. ¶¶ 24 & 33). 49 C.F.R. § 380.305—the regulation Plaintiff claims Defendant violated— allegedly establishes minimum training requirements for LCV operators and minimum qualification requirements for LCV driver-instructors, which include UPS's On-Road Supervisors such as Ms. Bermudes. (*Id.* ¶¶ 18–20). Plaintiff alleges that pursuant to 49 CFR § 380.305(a), "no motor carrier shall knowingly allow, require, permit, or authorize a driver-instructor in its

employ to provide LCV driver training unless such person is a qualified LCV driver-instructor under the requirements of Part 380, Subpart C." (*Id.* ¶ 21). Further, pursuant to 49 CFR § 380.305(b), Plaintiff alleges that "a motor carrier that employs qualified LCV driver-instructors shall provide evidence of the certifications required by 49 C.F.R. § 380.301 or § 380.303 when requested by an authorized FMCSA, State, or local official in the course of a compliance review." (*Id.* ¶ 22). However, none of these allegations plausibly indicate a substantial nexus between the complained-of conduct—UPS's failure to ensure that Ms. Bermudes obtained a proper 1094 certification—and the law or public policy Plaintiff alleges was violated—49 C.F.R. §§ 380.301, 303 and 305. As Defendant points out (Mov. Br. at 12–13), Plaintiff provides no allegations to explain what a "1094 certification" is, nor does he reference any provision in 49 C.F.R. § 380.305 that requires On-Road Supervisors, such as Ms. Bermudes, to pass a 1094 certification or any other certification "on an annual basis." (Am. Compl. ¶ 24). And the Court's own review of that regulation does not reveal any provision that references a requirement to pass an annual 1094, or other certification.[4] Further, though 49 C.F.R. § 380.305 requires that LCV driver-instructors

---

[4] 49 C.F.R. § 380.305 provides the following:

   (a) No motor carrier shall:

      (1) Knowingly allow, require, permit or authorize a driver-instructor in its employ, or under contract to the motor carrier, to provide LCV driver training unless such person is a qualified LCV driver-instructor under the requirements of this subpart; or

      (2) Contract with a training institution to provide LCV driver training unless the institution:

         (i) Uses instructors who are qualified LCV driver-instructors under the requirements of this subpart;
         (ii) Is accredited by an accrediting institution recognized by the U.S. Department of Education;
         (iii) Is in compliance with all applicable State training school requirements; and
         (iv) Identifies drivers certified under § 380.401 of this part, when requested by employers and/or an authorized FMCSA, State, or local official in the course of a compliance review.

14

provide evidence of the certifications required by 49 C.F.R. § 380.301 or § 380.303, nothing in

Sections 380.301 and 380.303 reference an annual certification, nor do they mention a "1094"

certification or recertification. *See id.* §§ 380.301–.303.[5]  In other words, the Amended Complaint

does not plainly explain why it was reasonable for Plaintiff to believe that Ms. Bermudes's failure

---

(b) A motor carrier that employs or has under contract qualified LCV driver-instructors shall provide evidence of the certifications required by § 380.301 or § 380.303 of this part, when requested by an authorized FMCSA, State, or local official in the course of a compliance review.

[5]    49 C.F.R. § 380.301 provides the following: There are two types of LCV driver-instructors: Classroom instructors and Skills instructors.  Except as provided in § 380.303, you must meet the conditions under paragraph (a) or paragraph (b) of this section to qualify as an LCV driver-instructor.

(a) Classroom instructor. To qualify as an LCV Classroom instructor, a person shall:

(1) Have audited the driver-training course that he/she intends to instruct.
(2) If employed by a training institution, meet all State requirements for a vocational instructor.

(b) Skills instructor. To qualify as an LCV skills instructor, a person shall:

(1) Provide evidence of successful completion of the Driver-Training Program requirements, as set forth in subpart B of this part, when requested by employers and/or an authorized FMCSA, State, or local official in the course of a compliance review.  The Driver-Training Program must be for the operation of [Commercial Motor Vehicles (CMVs)] representative of the subject matter that he/she will teach.
(2) If employed by a training institution, meet all State requirements for a vocational instructor;
(3) Possess a valid Class A [commercial driver's license (CDL)] with all endorsements necessary to operate the CMVs applicable to the subject matter being taught (LCV Doubles and/or LCV Triples, including any specialized variation thereof, such as a tank vehicle, that requires an additional endorsement); and
(4) Have at least 2 years' CMV driving experience in a vehicle representative of the type of driver training to be provided (LCV Doubles or LCV Triples).

And 49 C.F.R. § 380.303 titled "Substitute for instructor requirements" provides the following:

(a) Classroom instructor. The requirements specified under § 380.301(a) of this part for a qualified LCV driver-instructor are waived for a classroom instructor-candidate who has 2 years of recent satisfactory experience teaching the classroom portion of a program similar in content to that set forth in Appendix F to this part.

(b) Skills instructor. The requirements specified under § 380.301(b) of this part for a qualified LCV driver-instructor are waived for a skills instructor-candidate who:

(1) Meets the conditions of § 380.111(b);
(2) Has CMV driving experience during the previous 2 years in a vehicle representative of the type of LCV that is the subject of the training course to be provided;
(3) Has experience during the previous 2 years in teaching the operation of the type of LCV that is the subject of the training course to be provided; and
(4) If employed by a training institution, meets all State requirements for a vocational instructor.

to pass her 1094 certification violated 49 C.F.R. §§ 380.301, 303 and 305.  And Plaintiff provides

no explanation in his Opposition Brief as to what a 1094 certification is or why a failure to pass a

1094 examination would contravene 49 C.F.R. §§ 380.301, 303 & 305.  Rather, in opposition,

Plaintiff merely recites the text of the aforementioned regulations—which make no reference to

an annual 1094 or other certification—and asserts in a conclusory manner that he reasonably

believed UPS violated 49 C.F.R. §§ 380.301, 303 and 305, by failing to ensure that Ms.

Bermudes's passed her 1094 examination.  Without additional allegations that clearly link UPS's

failure to ensure that Ms. Bermudes obtained a proper 1094 certification with the requirements

imposed by 49 C.F.R. §§ 380.301, 303 and 305, the Court cannot infer that there is a substantial

nexus between the complained-of conduct and the law or public policy identified by Plaintiff.  *See*

*Tinio v. Saint Joseph Reg'l Med. Ctr.*, 645 F. App'x 173, 178 (3d Cir. 2016) ("Tinio argues that

she reasonably believed that St. Joseph's failure to staff a PCA on the unit violated a clear mandate

of public policy delineated in the DNV Healthcare Inc. Accreditation Requirements.  The provision

Tinio claims St. Joseph's violated . . . does not bear a substantial nexus to St. Joseph's failure to

staff a PCA on the unit.  The provision does not mention PCAs, much less require PCAs to be

staffed on every nursing unit.  Rather, this is a vague provision regarding the staffing of nurses

that provides no standard by which a deficiency can be ascertained."); *Arterbridge v. Wayfair LLC*,

No. 22-1547, 2023 WL 3243986, at *3 (3d Cir. May 4, 2023) (finding that plaintiff failed to allege

a definite standard by which employer's conduct could be gauged to support CEPA claim where

plaintiff alleged that defendant terminated him because he violated a company policy when he

returned to work while still awaiting results from a COVID-19 test and argued that this policy

violated a clear public policy mandate articulated through guidance issued by the CDC and through

public statements by Governor Murphy, "because nothing in the guidance documents cited by

[p]laintiff require[d] businesses to adopt any particular testing protocol."); *Safonof v. DirectSat USA*, No. 19-7523, 2020 WL 1527946, at *4 (D.N.J. Mar. 31, 2020) ("Nevertheless, [p]laintiff's [c]omplaint fails because it lacks factual specificity to establish a substantial nexus between the alleged conduct and the supposed violations. The [c]omplaint does not plainly specify the ways in which said statutes were violated. It merely provides, as [d]efendant states, 'a laundry list' of nine statutes followed by the conclusory statement that [d]efendant's actions violated all of them as well as common law fraud. It does not clearly link [complained of] behavior to the offenses or describe the statutes in any way."). And because no such substantial nexus is forthcoming, Defendant's motion to dismiss must be granted. *Gaglione*, 2007 WL 2141429, at *7.

Plaintiff's remaining arguments to the contrary are unavailing. In opposition, Plaintiff contends that even if he was somehow wrong about the law, he maintains that he was correct in believing that UPS requires an annual 1094 examination to comply with 49 C.F.R. §§ 380.301, 303 & 305. (Opp. Br. at 16–18). To be sure, as set forth above, a plaintiff need not prove that a law or public policy was actually violated, just that he reasonably believed it was violated. *Dzwonar*, 828 A.2d at 900–01. However, on a motion to dismiss in a CEPA case, the Court must still "'make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff.'" *Myers*, 2020 WL 2744632, at *4 (quoting *Dzwonar*, 828 A.2d at 901). And here, as described above, the Court is unable to make such a finding where none of the regulations cited by Plaintiff make any reference to an annual 1094 or other certification. Further, to the extent that Plaintiff attempts to argue that Ms. Bermudes's failure to pass her 1094 certification was in violation of UPS policy, such an allegation is insufficient to sustain a CEPA claim because CEPA does not cover internal rule violations. *Smith v. TA Operating LLC*, No. 10-2563, 2010 WL 3269980, at *5 (D.N.J. Aug. 17,

2010) ("CEPA is not intended to cover internal rule violations and therefore, [p]laintiff's reliance therein is legally insufficient to support her CEPA claim."); *Dzwonar,* 828 A.2d at 904 (stating that the trial court should have precluded CEPA claim based on violation of union rules because "bylaws are not a law, rule or regulation pursuant to CEPA" (internal quotation marks omitted)); *see also Fischer v. G4S Secure Sols. USA, Inc.*, 614 F. App'x 87, 92 (3d Cir. 2015).  In sum, as stated, without additional allegations that link UPS's failure to ensure that Ms. Bermudes obtained a proper 1094 certification with the requirements imposed by 49 C.F.R. §§ 380.301, 303 and 305, the Court cannot plausibly infer that there is a substantial nexus between the complained-of conduct and the law or public policy identified by Plaintiff.  Accordingly, the Court finds that Plaintiff has again failed to plead the first required element of a claim under CEPA.

### B.    Causal Connection

Plaintiff has also again failed to plead the fourth required element of a claim under CEPA. In its Moving Brief, Defendant contends that Plaintiff has failed to address the pleading defects identified by the Court in its December 29, 2023 Opinion, which found that Plaintiff had failed to adequately allege that there was a causal connection between Plaintiff's whistle-blowing activity and the adverse employment action.  (Mov. Br. at 5).  Specifically, Defendant maintains that Plaintiff has again failed to allege that a causal connection exists between the whistle-blowing activity and the adverse employment action, in part because there is no temporal proximity between Plaintiff's alleged whistle-blowing activity and his termination, and because Plaintiff has failed to allege any other circumstantial facts suggesting a causal link.  (*Id.* at 5–9).  In Opposition, Plaintiff argues that he has sufficiently alleged a causal connection between the whistle-blowing activity and the adverse employment action because he pleads that he was subjected to a retaliatory faux investigation shortly after he complained about Ms. Bermudes's lack of qualifications and

was terminated despite repeatedly complaining about Ms. Bermudes's lack of qualifications. (Opp. Br. at 18–27). And regardless, he contends that Defendant's prolonged investigation into his alleged misconduct cannot cut off the causal connection between his complaints about Ms. Bermudes and his eventual termination. (*Id.* at 22–24). For the reasons set forth below, the Court agrees with Defendant and finds that Plaintiff has again failed to adequately plead the fourth required element of a claim under CEPA.

To satisfy the causation prong of a CEPA claim, "a plaintiff must show that the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" *Robles v. U.S. Envtl. Univ. Svcs., Inc.*, 469 F. App'x 104, 107 (3d Cir. 2012) (quoting *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001)). To determine whether a causal connection exists between a plaintiff's protected activity and the adverse employment action, courts should consider all the circumstances surrounding the employment decision. *See Maimone v. City of Atl. City*, 903 A.2d 1055, 1064 (N.J. 2006) (citing *Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 551 (N.J. 2000)). A causal connection may be established by showing (i) "an unusually suggestive temporal proximity" between the protected conduct and the allegedly retaliatory action or (ii) "a pattern of antagonism coupled with timing." *Martone v. Jet Aviation Flight Servs. Inc.*, No. 19-21011, 2020 WL 3969919, at *5 (D.N.J. July 13, 2020) (citing *Clark v. Philadelphia Hous. Auth.*, 701 F. App'x 113, 116 (3d Cir. 2017)). Temporal proximity raises an inference that the protected activity was the likely reason for the adverse action. *Campbell v. Abercrombie & Fitch, Co.*, No. 03-3159, 2005 WL 1387645, at *7 (D.N.J. June 9, 2005) (citing *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997)). However, "the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two.'" *Young v. Hobart W. Grp.*,

19

897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997)).    In some circumstances, temporal proximity between whistle-blowing activity and adverse action against an employee is so "unusually suggestive" of retaliatory conduct as to obviate the need for additional allegations to establish the causal nexus.    *Id*. However, "[w]here the timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link."    *Id.*

Here, the Court finds that Plaintiff has again failed to plead causation.[6]  First, Plaintiff fails to allege facts that would show an *unusually suggestive* temporal proximity between the protected activity and the allegedly retaliatory action to give rise to an inference of causation.    As in his original Complaint, Plaintiff again alleges in his Amended Complaint that he "immediately" complained to his supervisors that Ms. Bermudes was not qualified to perform her job when, in or around March 2021, Ms. Bermudes was transferred to UPS's facility in New Jersey and admitted to Plaintiff that her Supervisor in Louisville had previously rubber-stamped her 1094 certification in 2020.    (Am. Compl. ¶¶ 27–33).    Yet, Plaintiff alleges that he was not terminated from employment at UPS until March 14, 2022, nearly a year after engaging in the alleged protected activity.    (*Id.* ¶ 42).    As the Court noted in its December 29, 2023 Opinion dismissing Plaintiff's original Complaint, there is nothing unusually suggestive about the timing of Plaintiff's termination, which occurred nearly one year after Plaintiff complained about Ms. Bermudes's lack of qualifications.    As such, the approximately twelve-month lapse between the alleged protected activity and Plaintiff's ultimate termination is insufficient to plausibly raise an inference of causation, standing on its own.    *See, e.g.*, *Choy v. Comcast Cable Commc'ns, LLC*, 629 F. App'x

---

[6]    As stated above, it is unclear under what provision of CEPA Plaintiff brings his claim.    (*See generally* Am. Compl.).    In his Opposition Brief, Plaintiff cites to both subsections N.J.S.A. § 34:19–3(a) and N.J.S.A. § 34:19–3(c). (Opp. Br. at 10).    Regardless, the plaintiff must allege that a causal connection exists between the whistle-blowing activity and the adverse employment action.    *Blackburn.*, 179 F.3d at 92.

362, 365 (3d Cir. 2015) (finding that six-week period between protected activity and termination failed to raise an inference of causation); *Urey v. Grove City College*, 94 F. App'x 79, 81 (3d Cir. 2004) ("Generally, it can be said that 'if at least four months pass after the protected action without employer reprisal, no inference of causation is created.'" (quoting *Woods v. Bentsen*, 889 F. Supp. 179, 187 (E.D. Pa. 1995))); *Perry v. Lee*, No. 19-17899, 2020 WL 3396805, at *7 (D.N.J. June 19, 2020) (finding that plaintiff failed to adequately allege causal connection for CEPA claim based on temporal proximity where plaintiff alleged that he was terminated nearly a year after engaging in any protected activity).

To be sure, unlike his original Complaint, Plaintiff's Amended Complaint now alleges that he continued to complain about Ms. Bermudes's inability to pass the 1094 certification examination "[o]ver *several months* after Ms. Bermudes transferred to New Jersey" in March 2021. (Am. Compl. ¶ 36 (emphasis added)). However, such an allegation is still insufficient for the Court to infer that there was an *unusually suggestive* temporal proximity between the protected conduct and the allegedly retaliatory action to give rise to an inference of causation. While there is no bright line rule on CEPA causation, "courts are 'reluctant to infer causal connection based on temporal proximity alone.'" *Martone*, 2020 WL 3969919, at *4 (quoting *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014)). Indeed, temporal proximity can establish causality for a *prima facie* case under CEPA only if it is "very close." *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Courts have found gaps as short as six weeks between the alleged whistle-blowing conduct and the adverse employment action insufficient to raise an inference of causation, particularly in the absence of any other circumstantial facts suggesting a causal link. *See, e.g.*, *Choy*, 629 F. App'x at 365 (finding that six-week period between protected activity and termination failed to raise an inference of causation); *Young v. Hobart W. Grp.*, 897

21

A.2d 1063, 1073–74 (N.J. Super. Ct. App. Div. 2005) (ruling plaintiff's termination four months after engaging in whistle-blowing activity did not, without more facts, suggest a causal link); *Urey*, 94 F. App'x at 81 ("Generally, it can be said that 'if at least four months pass after the protected action without employer reprisal, no inference of causation is created.'" (quoting *Woods*, 889 F. Supp. at 187)); *see also Martone*, 2020 WL 3969919, at *5 (finding that plaintiff failed to adequately allege a causal connection to support a CEPA claim because plaintiff "would need to allege more than a lapse of *ten days* between her final report and termination to render the timing unusually suggestive." (emphasis added)). Accordingly, though Plaintiff alleges that he continued to complain about Ms. Bermudes's inability to pass the 1094 qualification "[o]ver *several months* after Ms. Bermudes transferred to New Jersey" in March 2021, he does not allege that he complained about this conduct in the weeks or even in the months leading up to his termination. (Am. Compl. ¶ 36 (emphasis added)). As such, the Court cannot infer that the temporal proximity between Plaintiff's alleged whistle-blowing activity and his ultimate termination is so "unusually suggestive" as to obviate the need for additional allegations to establish the causal nexus, particularly since courts are "reluctant to infer a causal connection based on temporal proximity alone." *Budhun*, 765 F.3d at 258; *Martone*, 2020 WL 3969919, at *5; *see also Figueroa v. Caliber Collision*, No. 22-1332, 2022 WL 9997786, at *3 (D.N.J. Oct. 17, 2022) (finding that plaintiff failed to adequately allege causal connection for CEPA claim in part where plaintiff only alleged that he was terminated shortly after he began whistle-blowing). And regardless, as the Court noted in its December 29, 2023 Opinion dismissing Plaintiff's original Complaint, even if some of Plaintiff's continued complaints about Ms. Bermudes occurred closer in time to his ultimate termination, Plaintiff still provides no allegations to explain why, after submitting the same complaint to his supervisors multiple times, Defendant was finally motivated to terminate him,

such that the Court could plausibly infer that "the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" *Robles*, 469 F. App'x at 107; *see also Borgese v. Dean Foods Co.*, No. 15-2907, 2017 WL 2780742, at *7 (D.N.J. June 26, 2017) ("Thus, the [c]ourt determines that there is not sufficient evidence in the record to determine causation based on [p]laintiff's complaints over the years. Simply put, [p]laintiff provides no evidence explaining why, after four years, WhiteWave was finally motivated by those particular complaints to terminate him.") (cleaned up)). In sum, the Court finds that Plaintiff has again failed to plausibly allege that that there was "an unusually suggestive temporal proximity" between the protected conduct and the allegedly retaliatory action to give rise to an inference of causation.[7]

Second, Plaintiff has again failed to allege facts that would show a pattern of antagonism coupled with timing to support causal connection. Even when a complaint fails to allege unusually suggestive temporal proximity, a plaintiff may still plausibly raise an inference of causation from other facts. More specifically, causation may be inferred "from the circumstances surrounding the employment action including . . . inconsistencies or contradictions in the employer's proffered legitimate reasons for its action," and "circumstantial evidence of a pattern of antagonism following plaintiff's protected conduct." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 856 (D.N.J. 2019) (quoting *Robles*, 469 F. App'x at 107–08) (internal quotation marks omitted). Here, like the original Complaint, the facts pleaded in the Amended Complaint do not suggest a pattern of antagonism, let alone one that emerged because Plaintiff reported Ms. Bermudes's lack of qualifications. To be sure, Plaintiff alleges that after he reported Ms. Bermudes's lack of

---

[7]    In opposition, Plaintiff cites to the Third Circuit's decision in *Robinson v. S.E. Pa. Transp. Auth.*, 982 F.2d 892, 894–95 (3d Cir. 1993) to support the proposition that courts can infer causation even where there is a two-year gap between the protected conduct and the allegedly retaliatory action. (Opp. Br. at 24). The Court is not persuaded. In *Robinson*, the court found that an inference of causation could be supported based on a pattern of antagonism that emerged after the protected conduct that included a "constant barrage of written and verbal warnings" filed against the plaintiff by defendant employer. *Robinson*, 982 F.2d 895. No such similar allegations are present here.

qualifications, Ms. Bermudes complained that Plaintiff engaged in inappropriate speech towards her, and UPS launched an investigation into her claims from August 2021 to February 2022. (Am. Compl. ¶¶ 37–39). However, the Court cannot say that UPS's investigation into Plaintiff's alleged misconduct plausibly amounts "to a *pattern* of antagonism so as to bridge the large gap in temporal proximity and suggest a causal connection between the protected activity and Plaintiff's termination." *Newton-Haskoor v. Coface N. Am.*, No. 11-3931, 2012 WL 1813102, at *6 (D.N.J. May 17, 2012), *aff'd*, 524 F. App'x 808 (3d Cir. 2013) (emphasis added); *see also Duong v. Benihana Nat'l Corp.*, No. 21-1088, 2022 WL 1125392, at *5 (3d Cir. Apr. 15, 2022) ("Duong does not point to any evidence that shows 'a pattern of antagonism' . . . one description of an isolated incident does not reflect a pattern of mischaracterizing Duong's conduct or otherwise antagonizing him."); *but see Robinson*, 982 F.2d at 895 (finding a pattern of antagonism through the "constant barrage of written and verbal warnings" filed against the plaintiff by defendant employer). This is particularly so given that CEPA does not insulate an employee from ordinary supervision. *See Higgins v. Pascack Valley Hosp.*, 730 A.2d 327, 338 (N.J. 1999). And here, Plaintiff does not allege that the investigation into Ms. Bermudes's complaint was antagonistic, harassing, or otherwise conducted improperly, or that he suffered any adverse consequences effecting his title, duties, or job function in the period leading up to his termination. *Chang v. Bank of New York Mellon Corp.*, No. 17-11061, 2021 WL 1207475, at *5 (D.N.J. Mar. 31, 2021) (finding that the circumstances leading up to plaintiff's termination did not suggest any pattern of antagonism where the plaintiff did not experience any reduction in compensation, nor did he suffer any adverse consequences effecting his title, duties, or job function.). Nor does Plaintiff make any argument in his Opposition Brief to show how UPS's investigation into Plaintiff's alleged misconduct amounted to a *pattern* of antagonism. (*See generally* Opp. Br.). Plaintiff has not

alleged any other facts such that causation could be inferred from the circumstances surrounding the employment action. For example, there is no allegation that Defendant offered inconsistent explanations for Plaintiff's termination. *See Waddell v. Small Tube Prod. Inc.*, 799 F.2d 69, 73 (3d Cir. 1986) (finding it would be appropriate for a district court to take inconsistent explanations into account when looking for the causation necessary to satisfy a *prima facie* case). In sum, Plaintiff has again failed to adequately allege facts to support an inference of temporal proximity or any other circumstantial facts suggesting a causal link indicating that his termination was retaliation for his complaints about Ms. Bermudes.

Plaintiff's arguments in Opposition are unavailing. To start, Plaintiff suggests that UPS's investigation into his alleged misconduct itself constituted an adverse employment action. (Opp. Br. at 20–21). As such, Plaintiff contends that he has plausibly alleged causation because this investigation into his alleged misconduct was initiated shortly after he reported Ms. Bermudes's lack of qualifications. (*Id.* at 4 & 20–21). The Court is not persuaded. As the Court already stated in its December 29, 2023 Opinion, the Court cannot say that Defendant's investigation into Plaintiff's alleged misconduct as reported by Ms. Bermudes constituted retaliation. (December 29, 2023 Opinion at 17). CEPA defines "retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. § 34:19-2(e). Accordingly, "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Cokus v. Bristol Myers Squibb Co.*, 827 A.2d 1173, 1180 (N.J. Super. Ct. Law Div. 2002), *aff'd*, 827 A.2d 1098 (N.J. Super. Ct. App. Div. 2003) (quoting *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)). Because CEPA's purpose is not to "assuage egos or settle internal disputes at the workplace," "[a]dverse employment actions do not qualify as retaliation under CEPA 'merely because they

result in a bruised ego or injured pride on the part of the employee."' *Beasley v. Passaic County*, 873 A.2d 673, 685 (N.J. Super. Ct. App. Div. 2005). The definition of retaliatory action "speaks in terms of completed action . . . . [It] does not encompass action taken to effectuate the discharge, suspension or demotion." *Keelan v. Bell Commc'ns Res.*, 674 A.2d 603, 607 (N.J. Super. Ct. App. Div. 1996) (internal quotation marks omitted). As such, "an investigation of an employee is not normally considered retaliation." *Beasley*, 873 A.2d at 684–85 (citation omitted). "It would require a strong showing to transmute [a] defense to the disciplinary charges into an affirmative CEPA claim." *Id.* (cleaned up). CEPA does not insulate an employee from ordinary supervision. *See Higgins*, 730 A.2d at 338 (holding CEPA does not insulate an employee from "discharge or other disciplinary action for reasons unrelated to the complaint"). As such, only a "strong showing" that an investigation was illegitimate may allow "an affirmative CEPA claim." *Beasley*, 873 A.2d at 685. Here, nothing in Plaintiff's Amended Complaint suggests that UPS's investigation into Ms. Bermudes's complaint against Plaintiff constituted an adverse employment action.[8] While conceivable that a long term, pervasive investigation of allegations already found to lack merit could constitute a retaliatory pattern of harassment, there are no allegations of such a situation here. In fact, Plaintiff at no point alleges that the investigation was harassing or otherwise conducted improperly, nor does he allege that the investigation affected his compensation or rank or was equivalent to a discharge. Rather, Plaintiff merely alleges that after Ms. Bermudes reported

---

[8]    To support his assertion that that UPS's investigation into Plaintiff's alleged misconduct itself constituted an adverse employment action, Plaintiff cites to the court's decision in *Farneski v. Cnty. of Hunterdon*, 916 F. Supp. 2d 573, 590 (D.N.J. 2013). (Opp. Br. at 21). The Court find's Plaintiffs reliance on that case unavailing. In *Farneski*, the court found that an employee's attempt to solicit complaints against the plaintiff did not constitute adverse employment actions within the meaning of CEPA because none of the incidents alleged had any impact on plaintiff's terms and conditions of employment. *Farneski*, 916 F. Supp. 2d at 590. Likewise, here Plaintiff at no point alleges that the investigation conducted against him was harassing or otherwise conducted improperly, nor does he allege that the investigation itself affected his compensation or rank or was equivalent to a discharge. As such, the Court cannot say, based on such allegations, that Defendant's investigation into Plaintiff's alleged misconduct as reported by Ms. Bermudes constituted an adverse employment action.

to UPS that Plaintiff and other employees engaged in appropriate speech towards her—an accusation Plaintiff does not contest—UPS investigated Ms. Bermudes's claims between August 2021 to February 2022. (Am. Compl. ¶¶ 37–39). Accordingly, the Court cannot say, based on such allegations, that Defendant's investigation into Plaintiff's alleged misconduct as reported by Ms. Bermudes constituted an adverse employment action.[9] *See Dillard v. Morris Cnty. Prosecutor's Off.*, No. 19-19089, 2020 WL 4932527, at *9 (D.N.J. Aug. 24, 2020) ("King claims that he engaged in protected activity in September 2017 by reporting workplace discrimination to Knapp. The only timely alleged adverse action, however, occurred more than two years later in October 2019, when King was suspended without pay. These events, without more, are too temporally distant to support a finding of causation . . . Furthermore, Plaintiff cannot rely on the allegations that he was subjected to 'unwarranted internal affairs investigations and poor performance evaluations' to satisfy the adverse employment action element" particularly where "there is no allegation that these actions impacted his compensation or rank or were equivalent to

---

[9]    Even if UPS's investigation into Plaintiff's alleged misconduct did constitute an adverse employment action, Plaintiff still fails to adequately allege a causal connection between Plaintiff's protected activity and the investigation. As an initial matter, Plaintiff fails to allege facts that would show an unusually suggestive temporal proximity between his complaints about Ms. Bermudes and the allegedly retaliatory investigation to give rise to an inference of causation. As recounted above, Plaintiff alleges he "immediately" complained to his supervisors that Ms. Bermudes was not qualified to perform her job when, in or around March 2021, Ms. Bermudes was transferred to UPS's facility in New Jersey and admitted to Plaintiff that her Supervisor in Louisville had previously rubber-stamped her 1094 examination in 2020. (Am. Compl. ¶¶ 27–33). Yet, Plaintiff alleges that UPS did not launch its investigation into Plaintiff's alleged misconduct until August 2021, nearly five months after Plaintiff engaged in the alleged protected activity. (*Id.* ¶ 37). There is nothing unusually suggestive about the timing of Defendant's investigation into Plaintiff. *See, e.g., Choy*, 629 F. App'x at 365 (finding that six-week period between protected activity and termination failed to raise an inference of causation). Further, though Plaintiff alleges that he continued to complain about Ms. Bermudes's inability to pass the 1094 certification examination "[o]ver *several months* after Ms. Bermudes transferred to New Jersey" in March 2021 (Am. Compl. ¶ 36 (emphasis added)), such an allegation is still insufficient for the Court to infer a causal connection in the absence of other facts suggesting a causal link since "courts are 'reluctant to infer causal connection based on temporal proximity alone.'" *Martone*, 2020 WL 3969919, at *4–5. This is particularly so given that Plaintiff provides no allegations to explain why, after submitting the same complaint to his supervisors multiple times, Defendant was finally motivated to retaliate against him, such that the Court could plausibly infer that "the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" *Robles*, 469 F. App'x at 107; *see also Borgese*, 2017 WL 2780742, at *7. And Plaintiff fails to allege any other circumstantial facts suggesting a causal link indicating that the investigation into his alleged misconduct was retaliation for his complaints about Ms. Bermudes.

a discharge."); *Sattelberger v. Twp. of Byram*, No. A-0468-07T1, 2008 WL 4391155, at \*6–7 (N.J. Super. Ct. App. Div. Sept. 30, 2008) (investigating an employee's activities did not constitute an adverse employment action under CEPA).[10]

Further, Plaintiff again appears to ask the Court to draw an inference of causation from the fact that he was subjected to a faux investigation and terminated despite having enjoyed a lengthy tenure working for Defendant with multiple promotions. (Opp. Br. at 20–22). The Court is not convinced. As the Court noted in its December 29, 2023 Opinion, "[y]ears of service, without more, is insufficient to establish causation." *Davis v. Supervalu, Inc.*, No. 13-0414, 2013 WL 1704295, at \*6 (D.N.J. Apr. 19, 2013). Here, Plaintiff's length of service is not probative of whether Defendant terminated Plaintiff in retaliation for his complaints about Ms. Bermudes, particularly since Plaintiff has failed to allege other circumstantial facts suggesting a causal link.

---

[10]    In opposition, Plaintiff contends that many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually can combine to make up a pattern of retaliatory conduct. (Opp. Br. at 22). And here, he contends that Ms. Bermudes's false accusations of misconduct coupled with Defendant's investigation of those false accusations amount to an adverse employment action. (*Id.*). In fact, he contends that "Defendant permitted Bermudes to use her baseless allegations as a sword against her own possible termination, and chose to retaliate against [Plaintiff] instead by only investigating the allegations made against him, and not the reasons why Bermudes obtained a 'rubber-stamped' 1094 certification in the first place." (Opp. Br. at 21). The Court is not convinced. As an initial matter, Plaintiff at no point in the Amended Complaint alleges that Ms. Bermudes's accusations against him were "false." In fact, he at no point disputes the legitimacy or accuracy of Ms. Bermudes's grievances in his Amended Complaint. (*See generally* Am. Compl.). And, as described above, Plaintiff at no point alleges that the investigation was harassing or otherwise conducted improperly. While "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually [can] combine to make up a pattern of retaliatory conduct" and be sufficient to establish an adverse employment action, *Green v. Jersey City Bd. Of Ed.*, 828 A.2d 883, 891 (N.J. 2003), CEPA does not insulate an employee from ordinary supervision. *See Higgins*, 730 A.2d at 338. As such, the Court finds Plaintiff's argument unavailing.

Further, Plaintiff appears to ask the Court to draw an inference of causation from the fact that he was terminated less than a month after UPS completed its investigation into Plaintiff's alleged misconduct. (Opp. Br. at 23). This is of no moment. As discussed above, here, the relevant inquiry in determining whether Plaintiff has adequately alleged causal connection includes whether there are any facts to plausibly indicate (i) "an unusually suggestive temporal proximity" between the protected conduct and the adverse action or (ii) "a pattern of antagonism coupled with timing." *Martone*, 2020 WL 3969919, at \*5. As discussed, Plaintiff has failed to allege any such facts.

*Cf. id.* (finding allegation that the plaintiff worked for the defendant for more than twenty years insufficient to establish causation). As such, the Court finds Plaintiff's argument unpersuasive.[11]

### C.    Further Amendment

Finally, Defendant contends that Plaintiff's Amended Complaint should be dismissed with prejudice because any further amendment would be futile. (Mov. Br. at 13–14). The Court agrees. "Although the grant of a motion to dismiss is usually without prejudice, a District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings." *Henry v. City of Allentown*, No. 12-1380, 2013 WL 6409307, at *2 (E.D. Pa. Dec. 9, 2013). Here, the Court finds that a dismissal with prejudice is appropriate due to Plaintiff's failure to cure deficiencies by amendments previously allowed as well as the futility of further amendment. To start, in dismissing Plaintiff's original Complaint, this Court outlined why Plaintiff failed to adequately allege the first and fourth elements of his CEPA claim, and afforded the Plaintiff an opportunity to amend, to no avail. (*See generally* December 29, 2023 Opinion). Further, in opposition, Plaintiff does not request another opportunity to amend, nor does he suggest what allegations he might add to adequately state a claim under CEPA. Under these circumstances, the Court finds that a dismissal with prejudice is appropriate. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018) ("[A] district court must grant leave to amend the complaint unless amendment would be futile or inequitable. But here, [plaintiff] had already amended her complaint once and did not move to amend again or suggest what she might add. The District Court concluded that further amendment would be futile. We agree.").

---

[11]    Because Plaintiff fails to allege facts indicating temporal proximity or any other circumstantial facts suggesting a causal link suggesting that his termination was retaliation for his complaints about Ms. Bermudes, the Court does not consider Defendant's additional arguments that attack Plaintiff's allegations for failing to adequately plead a causal connection. (*See* Mov. Br. at 9–11).

**IV.    CONCLUSION**

Based on the foregoing, Defendant's motion (D.E. No. 34) is **GRANTED**, and Plaintiff's

Amended Complaint is dismissed *with prejudice*.  An appropriate Order follows.

Dated: September 30, 2024                                      *s/ Esther Salas*
                                                              **Esther Salas, U.S.D.J.**

30